IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JAY BILLNITZER | ) | CASE NO. |
| 1126 North Central Avenue | ) | |
| Apartment 305 | ) | JUDGE: |
| Glendale, California 91202 | ) | |
| | ) | |
| On behalf of himself and all others | ) | |
| similarly-situated | ) | **COLLECTIVE ACTION** |
| | ) | **COMPLAINT FOR DAMAGES** |
| Plaintiff, | ) | **AND INJUNCTIVE RELIEF** |
| | ) | **UNDER THE AGE** |
| v. | ) | **DISCRIMINATION IN** |
| | ) | **EMPLOYMENT ACT** |
| CEDAR FAIR, L.P. | ) | |
| c/o Richard L. Kinzel, statutory agent | ) | |
| One Causeway Drive | ) | |
| Sandusky, Ohio, 44870 | ) | (Jury Demand Endorsed Herein) |
| | ) | |
| -and- | ) | |
| | ) | |
| MAGNUM MANAGEMENT | ) | |
| CORPORATION | ) | |
| c/o Corporation Service Company | ) | |
| 3366 Riverside Drive, Suite 103 | ) | |
| Upper Arlington, Ohio, 43221 | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION.

1.  This is an action under the Age Discrimination in Employment Act to correct unlawful employment practices on the basis of age, and to provide appropriate compensatory damages and injunctive relief to Plaintiff Jay Billnitzer and the class of employees who have been adversely affected by these unlawful employment practices.

2.  For decades, Defendants have employed seasonal employees from around the country and around the world to work at Cedar Point Amusement Park in Sandusky, Ohio ("Cedar Point") during its operating season, typically running from May through October of each year. In

order to attract these employees and to make their seasonal employment away from home financially viable, Defendants have traditionally offered free or substantially discounted subsidized housing in dormitories located on-site at Cedar Point or nearby ("Company Housing"). While a majority of the seasonal employees who lived in the Company Housing were college aged, between ages eighteen (18) and twenty-nine (29), older seasonal employees were also entitled to live in the Company Housing and many did so.

3.  In January of 2021, Defendants quietly instituted a new policy that expressly prohibited older workers from receiving the benefit of Company Housing in favor of making the privilege exclusively available to only substantially younger employees, i.e., those between the ages of ages eighteen (18) and twenty-nine (29).

4.  Defendant's actions—directed by parent company Cedar Fair, L.P.—indisputably violate the Age Discrimination in Employment Act and Ohio R.C. § 4112.02(A).[1]

5.  Cedar Fair must be enjoined from continuing to systematically discriminate against Billnitzer and other older workers. This is a paradigmatic case for collective action certification under 29 U.S.C. § 216(b).

## PARTIES.

6.  Billnitzer is a 65-year-old individual residing in Glendale, California and is a former employee of Defendants. Billnitzer's signed consent to sue form is attached hereto as Exhibit "A."

7.  The ADEA Collective Class Members are all former employees of Cedar Fair, L.P. who were denied the privilege of company provided, subsidized housing because they were age forty (40) or older.

---

[1] Billnitzer intends to assert an individual claim under Ohio for age discrimination but has not yet fully exhausted his administrative remedies under Ohio law. At the appropriate time, Billnitzer will amend this complaint to assert the individual claim.

8. Cedar Fair, L.P. is a domestic corporation with its principal place of business located in Erie County, Ohio.

9. Magnum Management Corporation ("Magnum") is a domestic corporation with its principal place of business located in Erie County, Ohio, and is a wholly-owned subsidiary and/or affiliate of Cedar Fair.

## JURISDICTION AND VENUE.

10. This Court has jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1331 because the action arises under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq*., which incorporates by reference the enforcement provisions of the Fair Labor Standards Act of 1938 (the "FLSA"), including 29 U.S.C. § 216.

11. Defendants' unlawful employment practices were committed within the jurisdiction of the United States District Court for the Northern District of Ohio, Western Division.

12. This Court has jurisdiction over Cedar Fair and Magnum because are corporations formed in the State of Ohio.

13. Cedar Fair operates Magnum, its wholly-owned subsidiary, with a unity of interest and ownership such that they it is a mere instrumentality of it parent Cedar Fair, including through the following actions:

   a. Defendants engage in the same business enterprise;

   b. Magnum and Cedar Point Park operate under Cedar Fair's board structure, and Cedar Fair is responsible for aligning the activities of these entities as part of its operation of Cedar Point, including, among other things, human resources, communication, IT, sales, marketing, and product development;

   c. Cedar Fair shares common board members and common employees with Magnum;

   d. Cedar Fair maintains a common internal human resources management system across Cedar Fair and Magnum;

3

e.  At all times referenced herein, Defendants maintain a unified set of human resource, performance evaluation, and compensation policies;

f.  Cedar Fair exerts control over the daily affairs of Magnum, including the labor activities and personnel decisions of its subsidiary employees; and

g.  Cedar Fair directly implemented a common personnel policy for Magnum.

14.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 626 because Defendants transact a substantial portion of their business in this District, maintain an office and manufacturing facility in this District, and operates as direct employers of more than 3,000 employees in this District.

15.  Additionally, a substantial part of the events or omissions giving rise to the claims in this action occurred in this District.

**ADEA COVERAGE.**

16.  At all times referenced herein, Cedar Fair and Magnum (collectively, "Cedar Fair") were an employer as that term is defined by the ADEA, in that Cedar Fair is engaged in an industry effecting commerce and had 20 or more employees for each working day for each of the 20 weeks during the relevant time period.

**ADMINISTRATIVE REMEDIES.**

17.  Within 300 days of the conduct alleged below, Billnitzer dually filed a Charge of Discrimination the Equal Employment Opportunity Commission ("EEOC"), EEOC Charge No., 532-2022-01241 against Defendants, alleging that he and other employees over the age of forty (40) had been discriminated against.

18.  The EEOC issued Billnitzer a Right to Sue Notice on October 20, 2022.

19.  A true and accurate copy of Billnitzer's Right to Sue letter is attached hereto as Exhibit "A."

20.  The EEOC continued to investigate Billnitzer's claims after issuing his Right to Sue letter.

4

21. On November 18, 2022, the EEOC found that there was reasonable cause that Defendants had discriminated against Billnitzer and others by "denying housing to employees at least age 40" that it offered to other, substantially younger employees between ages 18 and 29.

22. Pursuant to 29 C.F.R. § 1614.407(b), Billnitzer has properly exhausted his administrative remedies prior to initiating this action.

23. Any and all other prerequisites to the filing of this suit have been met.

### FACTUAL ALLEGATIONS.
### (Facts Regarding Defendants' Discriminatory Denial Of Housing Benefits To A Class Of Employees Over Age Forty).

24. Cedar Fair owns and operates amusement parks throughout the United States, to include the Cedar Point amusement park located in Sandusky, Ohio ("Cedar Point").

25. At all times referenced herein, Cedar Fair regularly employed temporary, seasonal workers to work at Cedar Point from approximately May through October, during Cedar Point's summer season.

26. At all times referenced herein, Cedar Fair and Magnum jointly employed Cedar Point park workers.

27. Because Cedar Fair hires so many seasonal workers from outside the Sandusky, Ohio area to work at Cedar Point, its workers face challenges obtaining affordable housing that is available on a seasonal basis.

28. In order to address the housing needs of Cedar Point's seasonal workforce, Cedar Fair offers Company Housing for employees who live more than 30 miles from the park ("Visiting Seasonal Employees").

29. Cedar Fair offers Company Housing at Cedar Point through its wholly owned subsidiary, Cedar Point Park, LLC.

30. The availability of Company Housing makes it possible for Visiting Seasonal Employees to afford housing and work at Cedar Point.

31. According to the United States Department of Housing and Urban Development, the average (50th percentile) rent for a one-bedroom apartment in the Erie County, Ohio area was $681.00 per month in 2021 and $690.00 in 2022.[2]

32. Upon information and belief, in 2021, Cedar Point offered dormitory rooms for approximately $10.00 per day, or $300.00-$310.00 per month.

33. In 2022, Cedar Point offered dormitory rooms that cost between $12.00 per day ($360.00 per month) and $16.00 per day ($480.00 per month).

34. During the Month of October, known as "Halloweekends" at Cedar Point, housing is offered to Visiting Seasonal Employees for free.

35. The Company Housing benefit saves Visiting Seasonal Employees a substantial amount on rent; makes it much easier for Visiting Seasonal Employees to find housing on a seasonal basis; and is a predominant factor Visiting Seasonal Employees must consider when determining whether or not it is financially viable for them to work at Cedar Point.

36. In addition to Company Housing benefits, Cedar Fair provides transportation from the Company Housing to Cedar Point, alleviating the need for Visiting Seasonal Employees to obtain their own transportation to and from the park.

37. Cedar Fair does not have sufficient dorm capacity to provide Company Housing to all Visiting Seasonal Employees.

38. Upon information and belief, each season numerous Visiting Seasonal Employees reject the employment offered to them by Cedar Fair and/or resign their employment when they are denied Company Housing.

39. At all times referenced herein, Cedar Fair was aware that many Visiting Seasonal Employees cannot work at Cedar Point unless they are offered Company Housing.

---

[2] See https://www.huduser.gov/portal/datasets/fmr.html#2021 and https://www.huduser.gov/portal/datasets/fmr.html#2022

40. There is a direct link between the availability of Company Housing and Cedar Fair's ability to retain Visiting Seasonal Employees to work at Cedar Point.

41. The Company Housing offered at Cedar Point is a privilege of employment for Visiting Seasonal Employees.

42. In or around 2021, Cedar Fair instituted a new age limit for the Company Housing offered at Cedar Point that prohibited employees over the age of 29 from receiving Company Housing benefits. ("Policy To Discriminate Against Older Visiting Seasonal Employees").

43. Pursuant to Cedar Point's Policy To Discriminate Against Older Visiting Seasonal Employees, Cedar Fair and Cedar Point Park, LLC affirmatively discriminates against seasonal employees over age forty (40) by only offering Company Housing to substantially younger employees.

44. In instituting Cedar Fair's Policy To Discriminate Against Older Visiting Seasonal Employees, Cedar Fair knew that it could prevent a substantial number, if not all Visiting Seasonal Employees over the age of forty (40) from working at Cedar Point.

45. Through its Policy To Discriminate Against Older Visiting Seasonal Employees, Cedar Fair could practically deny employment to Visiting Seasonal Employees applicants over the age of forty (40) while simultaneously being able to argue that on paper, it had hired or offered to hire these applicants.

46. Through its Policy To Discriminate Against Older Visiting Seasonal Employees, Cedar Fair is able to attract and retain a greater number of younger workers because the dorm rooms that it would have provided to Visiting Seasonal Employees over the age of forty (40) are now available for these younger workers exclusively.

47. Through its Policy To Discriminate Against Older Visiting Seasonal Employees, Cedar Fair effectively reduced the compensation paid to Older Visiting Seasonal Employees by forcing them to incur higher housing costs if they wanted to work at Cedar Point.

48. The reduced cost and/or free Company Housing Cedar Point provided only to younger employees was a form of compensation that Cedar Point denied to older workers based on their age.

49. There is no dispute in this litigation that since 2021, Cedar Fair has denied the same Company Housing privilege it offers to younger employees to those over age 40 expressly because of their age.

50. Cedar Fair has no overriding business justification for discriminating against employees over age 40 with regards to Company Housing, other than a desire to make seasonal employment at Cedar Point more attractive and financially viable for younger employees while simultaneously making such employment less attractive and less financially viable for older employees, thus increasing the overall percentage of younger employees in Cedar Point's workforce.

### (Facts Regarding Plaintiff Jay Billnitzer).

51. At all times referenced herein, Billnitzer resided in California.

52. Billnitzer does not own any real property in Ohio.

53. Billnitzer is a former Visiting Seasonal Employee of Cedar Fair.

54. Billnitzer worked for Cedar Fair during the "Halloweekends" time period at Cedar Point during the 2019 and 2020 seasons.

55. Billnitzer was 61 when he worked for Cedar Fair in 2019.

56. Billnitzer stayed in Cedar Fair's Company housing for free during the time he worked at Cedar Point during 2019.

57. Billnitzer was 62 when he worked for Cedar Fair in 2020.

58. Billnitzer stayed in Cedar Fair's Company housing for free during the time he worked at Cedar Point during 2020.

59. In or around January of 2021, Billnitzer began the process of getting rehired to work at Cedar Point for the 2021 Halloweekends season ("2021 Rehiring Process").

60. Billnitzer completed the 2021 Rehiring Process online.

61. While Billnitzer was completing the 2021 Rehiring Process, he learned that Company Housing was no longer available to him because of his age, 63.

62. Billnitzer decided to go forward with the 2021 Rehiring Process notwithstanding his being denied Company Housing because he believed that someone would make an exception for him as it got closer to his "start date" at Cedar Point (in or around September of 2021).

63. Billnitzer was rehired in or around January of 2021 and took part in periodic online training classes during the spring.

64. In or around July of 2021, Billnitzer travelled to Ohio to visit family.

65. While Billnitzer has family in Ohio, they live hours from Cedar Point.

66. While Billnitzer was in Ohio, he visited Cedar Point for onboarding ("Onboarding").

67. While Billnitzer was Onboarding, he approached a manager named Dean Marcur about being denied Company Housing.

68. Billnitzer asked Marcur if he could do anything about Billnitzer's being denied Company Housing.

69. Billnitzer told Marcur that he could not locate an affordable housing option for the Halloweekend season and that being denied Company Housing would prevent him from being able to work at Cedar Point.

70. Marcur told Billnitzer there was nothing he could do and that the Policy To Discriminate Against Older Visiting Seasonal Employees had been approved and implemented by "higher ups."

71. Between July and late August, 2021, Billnitzer continued to request that Cedar Fair reconsider its Policy To Discriminate Against Older Visiting Seasonal Employees and to allow him to live in Company Housing during his season, as he had in years past.

72. Cedar Fair refused to change its policies or to grant Billnitzer an exception.

73. Cedar Fair insisted on maintaining and enforcing its facially discriminatory policies against Visiting Seasonal Employees over age 40.

74. As a result of Cedar Fair's discrimination against Visiting Seasonal Employees over age 40, Billnitzer could not afford to continue his employment with Cedar Fair into the 2021 Halloweekend's season.

75. Billnitzer was forced to resign his employment with Cedar Fair on or about September 1, 2021 because of Cedar Fair's discrimination against him.

76. Cedar Fair has continued to maintain and enforce its Policy To Discriminate Against Older Visiting Seasonal Employees into the 2022 and 2023 seasons.

77. As a result of Cedar Fair's ongoing Policy To Discriminate Against Older Visiting Seasonal Employees, Billnitzer has been unable to seek reemployment with Cedar Fair to work at Cedar Point.

## **COLLECTIVE ACTION ALLEGATIONS**.

78. Billnitzer incorporates by reference each of the allegations in the preceding paragraphs.

79. Cedar Fair's Policy To Discriminate Against Older Visiting Seasonal Employees is just that – a policy that discriminates against all Visiting Seasonal Employees over age 40 – and is not limited to Billnitzer.

80. Billnitzer brings this as a collective action pursuant to 29 U.S.C §§ 626(b) and 216(b) on behalf of himself and all similarly-situated individuals who are part of the following class:

> All employees, former employees, or applicants for employment at Cedar Point Amusement Park in Sandusky, Ohio who were denied housing since January 1, 2021 at any dormitory maintained by Cedar Fair, L.P. or any of its subsidiaries or affiliates at Cedar Point Amusement Park because they were age forty (40) or older.

81.  Collective Action treatment of Billnitzer's ADEA claim is appropriate because Billnitzer and the ADEA Collective Class Members have been subjected to the same company-wide, common business practice referenced in Paragraphs 12-50 of the foregoing Complaint, were denied the same Company Housing privileged based on their age; and the success of their claims depends on the resolution of common issues of law and fact, including, *inter alia*, whether Cedar Fair's Policy To Discriminate Against Older Visiting Seasonal Employees violates the ADEA.

## COUNT I: VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, 29 U.S.C. § 621.

82.  Billnitzer re-allege and incorporate by reference the allegations set forth in paragraphs 1-81, above.

83.  Pursuant to 29 U.S.C. §623(1), it is unlawful to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."

84.  Pursuant to 29 U.S.C. §623(2), it is unlawful to "limit, segregate, or classify… employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age.

85.  Cedar Fair's Policy To Discriminate Against Older Visiting Seasonal Employees violates 29 U.S.C. §623(1) because it denies workers over 40 with the privilege and benefit of subsidized, affordable Company Housing and subjects these older employees less favorable terms and conditions of employment than substantially younger employees.

86.  Cedar Fair's Policy To Discriminate Against Older Visiting Seasonal Employees violates 29 U.S.C. §623(2) because it segregates and treats employees over 40 differently from their substantially younger counterparts by not affording them the same terms, conditions, benefits, and privileges of employment enjoyed by these substantially younger employees

and because it has the effect of denying employment opportunities to workers over 40 by making seasonal employment much more expensive to maintain, if not rendering such employment financially impractical.

87. Cedar Fair's Policy To Discriminate Against Older Visiting Seasonal Employees forces these employees to chose between the hobson's choice of paying significantly more for housing than substantially younger employees must pay or simply declining to work at Cedar Point.

88. As a result of Cedar Fair's Policy To Discriminate Against Older Visiting Seasonal Employees, Billnitzer was forced to resign his employment in 2021 and he remained ineligible to reapply for employment.

89. As a result of Cedar Fair's Policy To Discriminate Against Older Visiting Seasonal Employees, countless Visiting Seasonal Employees similarly-situated to Billnitzer also have been denied Company Housing, in violation of their rights under the ADEA.

90. Cedar Fair's unlawful discriminatory conduct constitutes a willful and wanton violation of the ADEA, was and is outrageous and malicious, was intended to injure and "screen out" Billnitzer and similarly-situated Visiting Seasonal Employees, and was done with conscious disregard of their civil rights, entitling Billnitzer and the ADEA Collective Class Members to an award of punitive damages.

91. To remedy the violations of the rights of Billnitzer and those similarly situated secured by the ADEA, Billnitzer requests that the Court award him and the ADEA Collective Class Members the relief prayed for below.

## **PRAYER FOR RELIEF.**

WHEREFORE, Plaintiff respectfully requests the following relief:

(a) A preliminary and permanent injunction against Cedar Fair and its officers, agents, and managers from continued unlawful discrimination against Plaintiff Billnitzer and similarly situated employees in violation of the ADEA;

(b) A preliminary and permanent injunction ordering Cedar Fair from maintaining or enforcing its discriminatory policy prohibiting Visiting Seasonal Employees over the age of forty (40) from residing in Company Housing;

(c) Certification of an opt-in collective action for all employees, former employees, or applicants for employment at Cedar Point Amusement Park in Sandusky, Ohio who were denied housing since January 1, 2021 at any dormitory maintained by Cedar Fair, L.P. or any of its subsidiaries or affiliates because they were age 40 or older so that they can make informed and timely decisions about participating in this action;

(d) An award of lost wages due to Plaintiff Billnitzer and those similarly situated because they were forced to resign, quit, or turn down employment at Cedar Point due to the implementation of Defendants' unlawful, discriminatory policies;

(e) An order requiring Defendants to reinstate Plaintiff Billnitzer and those similarly-situated who were forced to resign and/or have been unable to work at Cedar Point due to the implementation of Defendants' unlawful, discriminatory policies;

(f) Awarding pre-judgment and post-judgment interest as provided by law; and

(g) Awarding reasonable attorneys' fees and costs;

Respectfully submitted,

*/s/Chris P. Wido*
Chris Wido (0090441)
**SPITZ, THE EMPLOYEE'S ATTORNEY**
25825 Science Park Drive, Suite 200
Beachwood, Ohio 44122
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email:  Chris.Wido@Spitzlawfirm.com

*Attorney for Plaintiff Jay Billnitzer*

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Jay Billnitzer demands a trial by jury on all triable questions of fact raised in this Complaint.

*/s/Chris P. Wido*
Chris P. Wido (0090441)
**SPITZ, THE EMPLOYEE'S ATTORNEY**